UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LAVONYA J. MOORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:14-cv-113 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, LaVonya J. Moore, on April 24, 2014. For the following reasons, the decision of the Commissioner is **AFFIRMED**.

*Background*

The plaintiff, LaVonya J. Moore, first applied for Disability Insurance Benefits and Supplemental Security Income in May 2005, alleging a disability onset date in September 2001. (Tr. 126). Initially, the Commissioner denied her application. (Tr. 126). Upon reconsideration, an Administrative Law Judge (ALJ) awarded her a closed period of disability from July 18, 2004 through November 15, 2005, the date she returned to work. (Tr. 99–103). Moore agreed with the decision at that time. (Tr. 126).

Moore filed a second application for Disability Insurance Benefits and Supplemental Security Income on March 12, 2008, alleging a disability onset date of February 1, 2006. (Tr. 126–27). The Commissioner denied her application initially and upon reconsideration. (Tr. 127). Moore subsequently filed a timely request for a hearing. (Tr. 127). A hearing was held on September 21, 2009 before ALJ Yvonne Stam, and the ALJ issued an unfavorable decision on

November 6, 2009. (Tr. 127). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 127). Moore then filed a complaint in the Northern District of Indiana on December 3, 2010. (Tr. 127). On June 23, 2011, Magistrate Judge Roger B. Cosbey affirmed the Commissioner's decision. (Tr. 126–38).

Moore filed the instant application for Disability Insurance Benefits on July 14, 2011 and for Supplemental Security Income on July 20, 2011, alleging a disability onset date of November 7, 2009. (Tr. 242, 249). The Disability Determination Bureau denied Moore's application on October 11, 2011, and again upon reconsideration on January 19, 2012. (Tr. 163–69, 172–77). Moore subsequently filed a timely request for a hearing on February 4, 2012. (Tr. 178). A hearing was held on January 16, 2013 before ALJ L. Raquel BaileySmith, and the ALJ issued an unfavorable decision on February 6, 2013. (Tr. 139–153). The Appeals Council granted review, vacated the February 6, 2013 decision, and remanded the case to an ALJ to evaluate further Moore's knee problems, her prescription for a cane, and to clarify her residual functional capacity (RFC). (Tr. 159–161).

A second hearing was held on November 6, 2013 before ALJ Steven J. Neary, and the ALJ issued a partially favorable decision on November 25, 2013. (Tr. 8–20). Vocational Expert (VE) Amy Kutschbach, Niyoka Moore, Moore's daughter, and Moore testified at the hearing. (Tr. 11). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–5).

The ALJ determined that Moore met the insured status requirements of the Social Security Act through December 31, 2012. (Tr. 13). At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Moore had not engaged in substantial gainful activity since November 7, 2009, her alleged disability onset date.

(Tr. 13). At step two, the ALJ determined that Moore had the following severe impairments: osteoarthritis and chondromalacia in both knees, obesity, disorders of the spine, and right shoulder pain. (Tr. 14). Additionally, the ALJ determined that Moore's skin problems, thyroid issues, hypertension, dyslipidemia, menstrual problems, and mental impairments were not severe. (Tr. 14–15). At step three, the ALJ concluded that Moore did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 15).

> The ALJ then assessed Moore's RFC as follows:
>
> > the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) (lifting, carrying, pushing, and pulling 10 pounds occasionally and less than 10 pounds frequently and, in an eight-hour period, sitting for a total of 6 hours and standing/walking for a total of 2 hours) except that she is not able to climb at all and she can only occasionally balance, stoop, kneel, crouch, [and] crawl. She is also not able to reach overhead with her right upper extremity.

(Tr. 16). The ALJ explained that in considering Moore's symptoms he followed a two-step process. (Tr. 17). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Moore's pain or other symptoms. (Tr. 17). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Moore's functioning. (Tr. 17).

Moore alleged that she suffered constant pain in her knees, back, and right shoulder. (Tr. 17). She could stand and walk for a couple of hours on some days and could sit for a couple of hours on some days. (Tr. 17). Moore could lift ten pounds and took Tylenol Extra Strength at times. (Tr. 17). She did not take her medications because they caused rectal and oral bleeding. (Tr. 17). Moore used a knee brace and a walker, could not crawl, and had difficultly climbing

3

steps and caring for her personal needs. (Tr. 17). Her daughter, Niyoka Moore, testified that Moore's worst problem was her knees, which prevented Moore from walking fast. (Tr. 17).

The ALJ found that Moore's impairments could cause the alleged symptoms but that her allegations regarding the intensity, persistence, and limiting effects not entirely credible. (Tr. 17). However, the ALJ noted that he found a more restrictive RFC than the State Agency opinion that determined that Moore could perform a limited range of light work. (Tr. 17). Additionally, the ALJ indicated that the RFC was consistent with the opinion of Dr. Bacchus Jr., who concluded that Moore had some limitations with prolonged stepping and climbing, squatting, kneeling, crawling, and walking on uneven ground. (Tr. 17).

Dr. Hopen found that Moore could not walk three quarters of a mile without assistance, that she needed assistance climbing three twelve inch steps at times, and that she only could walk a quarter mile without assistance. (Tr. 17). Additionally, Drs. Jenkinson and Kaplansky determined that Moore could not work more than twenty or twenty-five hours per week. (Tr. 18). However, the ALJ gave those opinions little weight because they were not supported by the objective medical evidence. (Tr. 18). The ALJ found no evidence of muscle atrophy or significant deficits in muscle strength, sensation, or reflexes. (Tr. 18). Additionally, he noted that Moore was prescribed a cane in March 2010, but he concluded that there was no convincing evidence that it was medically necessary on a consistent or regular basis. (Tr. 18). Rather, he indicated that Moore did not use her cane at her September 2011 physical examination with Dr. Bacchus. (Tr. 18).

The ALJ also found Moore incredible based on her activities of daily living. (Tr. 18). Moore lived alone, independently could care for her personal needs, did household chores and some cooking, drove, and sang in the church choir. (Tr. 18). Last, the ALJ concluded that the

objective medical evidence did not support Moore's allegations. (Tr. 18). Moore admitted that she did not take any medications on a consistent or regular basis, but she stated that she received Synvics injections every six months in her knees. (Tr. 18). Although the ALJ found evidence of degenerative changes and osteochondral defects in her knees and possible early osteochondral defects or avascular necrosis in her right hip, he found her physical examinations largely unremarkable since her alleged onset date. (Tr. 18). The ALJ did note Moore's obesity, high blood pressure, an occasional rash, crepitus and tenderness over both knees, slow movement, an antalgic gait, tenderness over her back and right shoulder, difficulty with heel and toe walking, tandem walking, hopping, and squatting, and a decreased range of motion in her back, neck, hips, knees, shoulders, and ankles. (Tr. 18). However, the ALJ found no evidence of muscle atrophy or significant deficits in muscle strength, reflexes, sensation, grip strength, or fine finger manipulative ability. (Tr. 18).

At step four, the ALJ determined that Moore was unable to perform her past relevant work. (Tr. 18). The ALJ noted that Moore was a younger individual age 45-49 before her established disability onset date. (Tr. 18). However, by applying the age categories non-mechanically, the ALJ found that Moore became an individual closely approaching advanced age on September 15, 2013. (Tr. 18–19). Prior to September 15, 2013, the date Moore's age category changed, considering her age, education, work experience, and RFC, the ALJ concluded that there were jobs in the national economy that Moore could perform, including sorter (450-500 jobs regionally, 20,000 jobs in Indiana, and 500,000 jobs nationally). (Tr. 19). After September 15, 2013, considering Moore's age, education, work experience, and RFC, the ALJ concluded that there were no jobs in the national economy that Moore could perform. (Tr. 20). Therefore, the ALJ found Moore not disabled through December 31, 2012, the date last

5

insured, and denied her application for Disability Insurance Benefits. (Tr. 20). However, the ALJ found Moore disabled beginning September 15, 2013, and granted her Supplemental Security Income starting on September 15, 2013. (Tr. 20).

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."); ***Pepper v. Colvin***, 712 F.3d 351, 361–62 (7th Cir. 2013); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* ***Bates***, 736 F.3d at 1098; ***Pepper***, 712 F.3d at 361–62; ***Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir. 2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013); ***Rice v. Barnhart***, 384 F.3d 363, 368–69 (7th Cir. 2004); ***Scott v. Barnhart***, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez***, 336 F.3d at 539.

Disability and supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**. The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920**. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b)**. If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; see *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e)**. However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age,

education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f)**.

Moore, filing *pro se*, has requested the court to reverse the ALJ's decision to a full favorable one because she has not returned to substantial gainful activity and, therefore, is permanently disabled. First, Moore has argued that the Agency's earnings records for November and December 2005 and through 2006 and 2007 were incorrect. Therefore, she has presented her correct wage information. It appears she has argued that she was due additional money during her closed period of disability from July 18, 2004 through November 15, 2005.

An ALJ granted her benefits for that closed period on January 25, 2008. Moore could have requested review of that decision from the Appeals Council. **20 C.F.R. §§ 404.967, 416.1467**. Generally, she would have needed to request review within a certain time period. **20 C.F.R. §§ 404.900, 416.1400**. The Appeals Council then would have either denied the request for review or granted the request and issued its own decision. **20 C.F.R §§ 404.981, 416.1481**. After the Appeals Council's decision, Moore could have requested district court review within sixty days. **20 C.F.R. §§ 404.981, 416.1481**. The record does not demonstrate that Moore requested review of the ALJ's January 25, 2008 decision. Therefore, this court does not have jurisdiction to review that decision or the closed period of disability from July 18, 2004 through November 15, 2005. Rather, this court has jurisdiction to review the decision of ALJ Steven J. Neary on November 25, 2013. Moore's wages from 2005 through 2007 do not affect ALJ Neary's decision, and this court will not review them.

Next, Moore has repeated evidence that was presented to ALJ Neary. She has indicated that she did not take her medication because it caused rectal and oral bleeding, but that she

received knee injections every six months. The ALJ reviewed the objective medical evidence, which included those allegations, and determined that it did not support Moore's level of alleged limitation. (Tr. 18). She also referenced the court to the opinions of Drs. Hopen, Jenkinson, and Kaplansky. Those opinions found that Moore had physical limitations and could not work more than twenty to twenty-five hours per week. The ALJ reviewed those opinions and gave them little weight because they were not supported by the objective medical evidence in the record. (Tr. 18). Additionally, she has referenced the court to letters from Pastor Ernest K. Starks and Peter Ford. Pastor Starks indicated that Moore sang in the church choir, which the ALJ noted. (Tr. 18). While Ford stated that Moore worked at the Allen County Public Library and that she would be considered for re-employment if a position became available that she could perform. Moore has not argued that the ALJ improperly discounted the opinions of the above doctors or that he failed to discuss the above evidence. Rather, she only has asked the court to review the above evidence.

Last, Moore has presented new evidence of doctors' appointments in 2014 and her current medical conditions. That evidence was not part of the record before the ALJ and occurred after the ALJ issued his decision. The court will not consider this new evidence when deciding whether the ALJ's decision was supported by substantial evidence. *See Eads v. Secretary of Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993). A court may consider new evidence when the claimant requests a remand under 42 U.S.C. § 405(g) based on new and material evidence. *Eads*, 983 F.2d at 817. Moore has not made that request.

However, even if Moore had made that request, the court does not find that the new evidence is material. Moore only has indicated that she returned to her family doctor for two appointments and that she had a colonoscopy. Evidence is material if it would cause the ALJ to

reach a different conclusion.  *Schmidt*, 395 F.3d at 742.  The new evidence does not speak to Moore's past condition at or before the hearing before the ALJ and therefore, could not affect the ALJ's decision.  *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) ("Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision and therefore does not meet the materiality requirement.") (citing **20 C.F.R. § 404.970(b)**).  Therefore, the court will not consider the new evidence when reviewing the ALJ's decision.

Moore has not demonstrated that the ALJ's decision was not supported by substantial evidence or that he erred by applying an incorrect legal standard.  The ALJ followed the five-step sequential evaluation process to determine whether Moore was disabled.  He reviewed the objective medical evidence, the opinion evidence from the doctors in the record, and Moore's allegations.  The ALJ included reasons to support his RFC, for not finding Moore entirely credible, and for discounting the opinions of Drs. Hopen, Jenkinson, and Kaplansky.  Furthermore, he relied on the opinion of Dr. Bacchus, the objective medical evidence, and Moore's activities of daily living to support his ultimate findings.  Therefore, the ALJ's decision was supported by substantial evidence.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 17th day of June, 2015.

/s/ Andrew P. Rodovich
United States Magistrate Judge